RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0349P (6th Cir.)
File Name: 00a0349p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

    *v.*

ROBERT OWEN BAILEY,
    *Defendant-Appellant.*

No. 99-5313

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 97-20255—Jerome Turner, District Judge.

Argued: September 12, 2000

Decided and Filed: October 3, 2000

Before: NORRIS and DAUGHTREY, Circuit Judges;
WISEMAN, District Judge[*].

---

## COUNSEL

**ARGUED:** Stuart B. Breakstone, MORTON, BREAKSTONE & GERMANY, Memphis, Tennessee, for Appellant. Dan L. Newsom, ASSISTANT U.S.

---

[*]The Honorable Thomas A. Wiseman, Jr., Senior United States District Judge for the Middle District of Tennessee, sitting by designation.

1

ATTORNEY, Memphis, Tennessee, for Appellee.
**ON BRIEF:**    Stuart B. Breakstone, MORTON,
BREAKSTONE & GERMANY, Memphis, Tennessee, for
Appellant.    Dan L. Newsom, ASSISTANT U.S.
ATTORNEY, Memphis, Tennessee, for Appellee.

———————

## OPINION

———————

WISEMAN, District Judge.    In this appeal, Defendant
Robert Owen Bailey appeals his conviction under 18 U.S.C.
§ 2422(b) for using the internet to attempt to persuade,
induce, entice, or coerce minors to engage in illegal sexual
activity.    For the reasons that follow, we **AFFIRM** the
conviction.

### I.

Defendant insists  the charged offence requires the specific
intent to commit illegal sexual acts rather than just the intent
to persuade or solicit the minor victim to commit sexual acts.
He complains that the trial court erroneously charged the jury
the latter, rather than requiring a finding by the jury of an
intent to commit the sexual act itself with the minor.    He
insists that, to hold otherwise, would criminalize mere sexual
banter on the internet, or would criminalize content-based
speech in violation of the First Amendment to the
Constitution.    Finally, he argues that the evidence at trial was
insufficient to sustain a conviction for attempt.    We address
these issues seriatim.

### II.

#### The Statute and The Necessary Intent

Interpretation of a statute begins with the statute's plain
language, and if such language is clear and unambiguous, the
Court will usually proceed no further. *Barker v. Chesapeake*

*& Ohio R.R.*, 959 F.2d 1361,1366 (6th Cir. 1992). At the time of Bailey's conviction, the statute at issue here read:

> Whoever, using any facility or means of interstate or foreign commerce . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years to engage in prostitution or any sexual act for which any person may be criminally prosecuted, *or attempts to do so*, shall be fined . . . .

18 U.S.C. § 2422(b) (emphasis added). While it may be rare for there to be a separation between the intent to persuade and the follow-up intent to perform the act after persuasion, they are two clearly separate and different intents and the Congress has made a clear choice to criminalize persuasion and the attempt to persuade, not the performance of the sexual acts themselves. Hence, a conviction under the statute only requires a finding that the defendant had an intent to persuade or to attempt to persuade. Defendant Bailey's attack is therefore meritless.

### III.

### Content-Based Speech and the First Amendment

Defendant relies on *Reno v. American Civil Liberties Union,* 521 U.S. 844 (1997), to support his assertion that 18 U.S.C. § 2422(b) infringes his right to constitutionally protected speech. In *Reno*, the Supreme Court found unconstitutional two provisions of the Communications Decency Act ("CDA"). The first provision prohibited the knowing transmission of "obscene or indecent" messages to anyone under the age of eighteen. *Id*. at 859. The second prohibited the use of a computer service to display "patently offensive" messages in a way that would make those messages available to those under the age of eighteen. *Id*. The Court found the CDA was a content-based blanket restriction on speech because its purpose was to protect children from the primary effects of "indecent" and "patently offensive" speech. *Id*. at 868. Neither "indecent" nor "patently offensive" was defined in the act, making the scope

of the act's coverage ambiguous and problematic. *Id.* at 870. Given such ambiguity, the Court doubted that the CDA had been carefully tailored to the congressional goal of protecting minors from potentially harmful materials and concluded that some messages entitled to constitutional protection would be self-censored by speakers who were unsure of the act's coverage and who feared criminal sanctions. *Id*. at 871.

No such overbreadth or ambiguity problems exist with 18 U.S.C. § 2422(b). The statute only applies to those who "knowingly" persuade or entice, or attempt to persuade or entice, minors. Thus, it only affects those who intend to target minors: it does not punish those who inadvertently speak with minors or who, as in *Reno*, post messages for all internet users, either adults or children, to seek out and read at their discretion. Any limited or incidental effect on speech does not infringe on any constitutionally protected rights of adults. Put another way, the Defendant simply does not have a First Amendment right to attempt to persuade minors to engage in illegal sex acts. Defendant's constitutional challenge is without merit.

## IV.

### Sufficiency of the Evidence

At trial, each minor testified that she had never met any of the other female witnesses prior to the trial. Each also testified that Bailey, under the alias Stealth725, contacted her, urged her to meet him, and used graphic language to describe how he wanted to perform oral sex on her. All three testified they told Bailey they were minors. One, A.M., e-mailed Bailey a picture of herself, which the police later retrieved from Bailey's computer. The same minor testified that Bailey e-mailed her his pager number and his private pin number for the pager and that he urged her to call him and arrange a meeting. M.M., whose report prompted the investigation of Bailey, testified that she became frightened when Bailey sent her a message identifying her hair color, what she had worn to school that day, and the time during which she ate lunch at school. The FBI then seized Bailey's computer and retrieved

several explicit messages that were identical to or similar to those the minors had described. The internet user names of the minors were also retrieved from Bailey's hard drive. Several e-mails wherein Stealth725 proposed meeting the girls to perform oral sex were read into the record. Bailey himself testified that he had tried to set up meetings with people six or eight different times, though he claimed no meeting had ever taken place, that it was all just a game, and that the minors were either mistaken or lying about telling him their ages.

The prosecution must have presented evidence of objective, overt acts that would allow a reasonable jury to find Bailey had taken a substantial step toward persuading, inducing, enticing, or coercing a minor to engage in illegal sexual activity. "A substantial step must be something more than mere preparation. . . . [I]t must be necessary to the consummation of the crime and be of such a nature that a reasonable observer, viewing it in context could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to violate the statute." *United States v. Manley*, 632 F.2d 978, 987-8 (2d Cir. 1980).

The evidence in this case was sufficient for a reasonable jury to find guilt of attempt to persuade beyond a reasonable doubt, as they did. The judgment and conviction are **AFFIRMED**.