**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0598n.06

No. 10-6039

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

***Jun 08, 2012***

LEONARD GREEN, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) |
| | ) |
| JEFFREY ALLEN HACKWORTH, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF KENTUCKY

BEFORE: GUY, COLE, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. Jeffrey Allen Hackworth appeals his conviction under 18 U.S.C.

§ 2422(b) for using the Internet to attempt to persuade an individual he thought was a fourteen-year-

old girl to engage in unlawful sexual activity. He argues that he was entrapped and that the

government failed to prove that he was predisposed to commit the offense. Hackworth, however,

has not shown that this court should disturb the jury's rejection of his entrapment defense. He also

raises a number of challenges to his conviction under § 2422(b). Contrary to his claims, the elements

of the underlying state offenses are not elements of the federal offense under § 2422(b). Further, §

2422(b) does not require the involvement of an actual minor for conviction. Hackworth waived his

challenge to the indictment. Finally, the jury instructions were proper.

I.

Jeffrey Hackworth came to the attention of Detective Mike Arterburn with the Louisville Metro Police Department's Crimes Against Children Unit when he contacted the detective via an Internet social networking site, "Yahoo! Instant Messenger." At the time, Detective Arterburn was posing online as fourteen-year-old "Amber Peek" as part of an investigation into adults soliciting children for sex or pornography over the Internet. Hackworth, a thirty-one-year-old married father, first contacted "Amber" to chat on February 18, 2009. The conversation ended after "Amber" gave her age as fourteen. Hackworth nevertheless sent "Amber" a "friend request," which "Amber" accepted. As a "friend," Arterburn could see when Hackworth was online and vice versa.

The next communication between "Amber" and Hackworth occurred on April 7, 2009, when "Amber" contacted Hackworth to chat. "Amber" said hello and then noted, "Nice photo," in response to Hackworth's avatar photo. His avatar—that is, the picture appearing beside his name for his "friends" to see—was of an erect penis. Hackworth asked where she was from, to which "Amber" quickly replied, "Louisville 14 female. LOL." Hackworth then asked "Amber" for pictures, and Arterburn offered photos of a young-looking female police officer strategically taken at locations where one would expect to find children. After receiving "Amber's" photos, Hackworth replied that it was "[t]oo bad you're only 14," and "I would be ready to come have some fun if you were older." The conversation continued with "Amber" asking Hackworth what he would want to do if he came to her house. He asked if "Amber" would be willing to first meet him on the street. Agreeing, "Amber" then prodded Hackworth to explain what he wanted to happen at their meeting.

Hackworth assured "Amber" that he just wanted to meet her and that he would not want to take their meeting "further." Detective Arterburn ended the conversation.

The following day, April 8, Hackworth initiated contact with "Amber." The conversation again turned to meeting. Hackworth informed "Amber" that he only wanted to "hang out." However, the conversation turned progressively sexual in nature. Hackworth eventually ended the conversation by stating, "I wouldn't ever meet ya too young sorry." Detective Arterburn testified that he planned to proceed with his next case when Hackworth contacted "Amber" again on April 9. Hackworth began the conversation by stating: "Wish you did massages. I would pay for it too." After a brief back-and-forth over what Hackworth would be willing to pay for a massage, the conversation ended.

The final conversation occurred the following day when Hackworth sent "Amber" a message that read, "Wish you would let me come show you how fun I really am." "Amber" asked Hackworth what they would do if they met, and he stated that they could have sexual intercourse and oral sex. The two agreed to meet at a Kmart near "Amber's" home. Arterburn notified the arrest teams and the decoy "Amber" of the plan to meet. Soon thereafter, Hackworth arrived at the Kmart and approached the decoy "Amber." The police moved in and made the arrest.

Hackworth was charged under 18 U.S.C. § 2422(b) with using the Internet to attempt to knowingly persuade, induce, entice, or coerce an individual who had not attained the age of 18 to engage in sexual activity for which a person can be charged with a crime. Before trial, Hackworth

sought a more definite statement as to the specific state statute the government alleged he had violated for purposes of § 2422(b). The district court denied his motion as untimely.

At trial, Detective Arterburn testified that, under Kentucky law, if Hackworth had intercourse with a fourteen-year-old, he would face a charge of rape, third degree, and if he had oral sex with a fourteen-year-old, he could be charged with sodomy, third degree. The district court denied Hackworth's motion for a directed verdict at the conclusion of the government's case-in-chief. The district court explained that the chat logs provided by the government demonstrated Hackworth's intent to meet someone underage and that the crime could exist without an actual victim.

The jury convicted Hackworth of violating 18 U.S.C. § 2422(b). The district court sentenced Hackworth to the statutory mandatory minimum of ten years' imprisonment. Hackworth timely appealed his conviction.

II.

Hackworth first challenges the jury's rejection of his entrapment defense. Viewing the evidence in the light most favorable to the government, a reasonable juror could have concluded beyond a reasonable doubt that Hackworth was predisposed to commit the offense. *See United States v. Anderson*, 76 F.3d 685, 690 (6th Cir. 1996) (citing *United States v. Clark*, 957 F.2d 248, 250 (6th Cir. 1992) (stating the standard)). An entrapment defense requires proof of two elements: "(1) 'government inducement of the crime, and [(2)] a lack of predisposition on the part of the defendant to engage in the criminal conduct.'" *United States v. Demmler*, 655 F.3d 451, 456 (6th Cir. 2011) (quoting *Mathews v. United States*, 485 U.S. 58, 63 (1988)). The government bears the

burden of proving predisposition beyond a reasonable doubt. *United States v. Pennell*, 737 F.2d 521, 534 (6th Cir. 1984) (citing *United States v. Jones*, 575 F.2d 81, 83 (6th Cir. 1978)).

The government presented sufficient evidence to prove Hackworth was predisposed to commit the offense. Predisposition is shown by

> [t]he character or reputation of the defendant, including any prior criminal record; whether the suggestion of the criminal activity was initially made by the Government; whether the defendant was engaged in criminal activity for profit; whether the defendant evidenced reluctance to commit the offense, overcome only by repeated Government inducements or persuasion; and the nature of the inducement or persuasion supplied by the Government.

*United States v. Al-Cholan*, 610 F.3d 945, 950 (6th Cir. 2010) (quoting *United States v. Moore*, 916 F.2d 1131, 1137 (6th Cir. 1990)). The government concedes that two of the factors cut against predisposition. First, Hackworth did not have a prior record of meeting with children for sex. A search of his home and computers did not reveal any evidence that Hackworth had an interest in minor females or in soliciting minors for sex or pornography. Second, he did not engage in the criminal activity for profit. However, these two factors do not overcome the strong evidence of Hackworth's predisposition.

Supporting its predisposition argument, the government introduced evidence that Hackworth, not "Amber," suggested the criminal activity. During the second chat session on April 7, Hackworth asked "Amber" for pictures immediately after she confirmed her age. He then pressed her to turn on her web cam and asked for pictures showing her "whole body." He also first raised the idea of meeting, commenting, "I would be ready to come have some fun if you were older." He later asked "Amber" for "sexy" photographs. In another conversation, Hackworth joked that he covertly had

taken pictures of "Amber" in the shower. When discussing what would happen if the two met—albeit after extensive taunting by "Amber" that he was "boring" for suggesting only that they meet and talk—Hackworth ultimately asked "Amber," "How about sex?" He then graphically described how he would have sex with "Amber," including methods and positions.

The government also presented evidence calling into question Hackworth's contention that he was reluctant to commit the offense. Detective Arterburn testified that Hackworth first contacted "Amber" to chat on February 18, 2009. Even though the conversation ended after "Amber" gave her age as fourteen, Hackworth took the additional step of sending a "friend request." The next contact occurred over a month later on April 7, 2009, when "Amber" commented on Hackworth's explicit avatar photo, stating, "Nice photo." From that point forward until his arrest, Hackworth opened each chat session. Detective Arterburn testified that he planned to discontinue chatting with Hackworth on April 7, 8, and 9; it was Hackworth who continued to open the chats.

Finally, "Amber's" requests for Hackworth to explain what he intended to do following his vague responses about meeting do not prove, as he suggests, that his will was overcome only by repeated government inducements or persuasion. Hackworth is correct that certain passages of the chat logs, viewed in isolation, support his argument that he only wanted to meet and talk with "Amber" at first. Further, he accurately describes how "Amber" pressed him to know "what [was] on the table." On a number of occasions "Amber" called Hackworth "boring" because he only wanted to "hang out." On this basis, standing alone, a jury could well have found entrapment.

Hackworth's explicit responses to "Amber's" prompting, however, cast sufficient doubt on his contention that he only wanted to meet this fourteen-year-old girl to talk.

The government provided Hackworth with an opportunity to commit the offense. But "[g]overnment agents do not entrap by merely presenting the opportunity to engage in criminal activity." *United States v. Summers*, 238 F. App'x 74, 76 (6th Cir. 2007) (citing *United States v. Nelson*, 922 F.2d 311, 317 (6th Cir. 1990)). The jury was given a proper entrapment instruction, as follows: "The government has the burden of proving beyond a reasonable doubt that the defendant was already willing to commit the crime prior to first being approached by government agents or other persons acting for the government. . . . Unless the government proves this beyond a reasonable doubt, you must find the defendant not guilty." R. 47 at 27-28 (Jury Instructions). A reasonable juror could have determined beyond a reasonable doubt that Hackworth was predisposed to commit the offense. This is especially so when viewing the evidence in the light most favorable to the government. *See Anderson*, 76 F.3d at 690. In this case we do not have a sufficient basis to disturb the jury's rejection of Hackworth's entrapment defense.

III.

A.

The absence of an actual minor does not preclude Hackworth's conviction for violating 18 U.S.C. § 2422(b). Section 2422(b) criminalizes using interstate commerce (here, the Internet) to "knowingly persuade[], induce[], entice[], or coerce[] any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with

a criminal offense, or attempt[] to do so." Hackworth argues that his conviction was based on insufficient evidence because the Kentucky crimes underlying his conviction require an actual minor for conviction and that with no actual minor, the Kentucky crimes of rape, third degree, and sodomy, third degree, were not crimes for which he "[could] be charged" to activate liability under 18 U.S.C. § 2422(b). Whether the Kentucky statutes require an actual minor for conviction is however immaterial; § 2422(b) does not incorporate the elements of the state offenses. *United States v. Hart*, 635 F.3d 850, 855 (6th Cir. 2011). Thus, the only question is whether the federal statute requires a minor's involvement for conviction. Section 2422(b)'s text and case law in this circuit and others support the conclusion that the statute does not require the subject of the defendant's coercion to be under eighteen years of age.

Here, the jury had to agree unanimously that Hackworth attempted to persuade "Amber" to engage in conduct that would have been chargeable as a crime under Kentucky law. *See Hart*, 635 F.3d at 855. The government presented evidence that Hackworth could be charged with two separate Kentucky offenses if he had committed the sexual acts he proposed. First, Detective Arterburn testified that if Hackworth had had sex with a fourteen-year-old in the manner suggested, he could be charged with rape in the third degree. A person is guilty of rape in the third degree if, "[b]eing twenty-one (21) years old or more, he or she engages in sexual intercourse with another person less than sixteen (16) years old." Ky. Rev. Stat. Ann. § 510.060(1)(b). Next, Arterburn testified that Hackworth could be charged with sodomy in the third degree if he had oral sex with someone fourteen years of age. A person is guilty of sodomy in the third degree if, "[b]eing twenty-one (21)

years old or more, he or she engages in deviate sexual intercourse with another person less than sixteen (16) years old." Ky. Rev. Stat. Ann. § 510.090(1)(b). Hackworth argues that both state offenses require an actual minor for conviction. Because the state offenses are not elements of the federal offense, his argument only has merit if the federal offense requires a minor.

The statutory language supports the reading that § 2422(b) does not require an actual minor for conviction. Section 2422(b) criminalizes persuasion and the attempt to persuade a minor to engage in unlawful sexual activity—not the actual performance of the sexual acts. *Hart*, 635 F.3d at 854 (quoting *United States v. Bailey*, 228 F.3d 637, 639 (6th Cir. 2000)). Indeed, the very inclusion of an "attempt" provision indicates that "something less than the actual persuasion of a minor is necessary for conviction." *See United States v. Tykarsky*, 446 F.3d 458, 466 (3d Cir. 2006) (citing *United States v. Meek*, 366 F.3d 705, 718 (9th Cir. 2004)). "Section 2422(b), in other words, was designed to protect children from the act of solicitation itself . . . ." *United States v. Hughes*, 632 F.3d 956, 961 (6th Cir. 2011).

The Third Circuit cautioned that reading § 2422(b) to require the involvement of an actual minor would render this provision largely meaningless—"as a practical matter, little exists to differentiate those acts constituting 'enticement' and those constituting 'attempted enticement.'" *Tykarsky*, 446 F.3d at 466-67. The focus should be on the defendant's subjective intent, not the actual age of the victim. *Id.* at 467. And the intent required is only the intent to persuade or entice or *to attempt* to persuade or entice. *Bailey*, 228 F.3d at 639.

Hackworth nevertheless argues that Congress' rejection of an amendment to § 2422(b) that would have expanded the statute to reach a defendant who subjectively believed that he was contacting a minor shows that Congress meant to exclude situations where detectives posed as minors. *See United States v. Gagliardi*, 506 F.3d 140, 145 (2d Cir. 2007) (*comparing* H.R. Rep. No. 105–557, at 2 (1998), *reprinted in* 1998 U.S.C.C.A.N. 678, 678 (proposing an amendment that would extend to one who "knowingly contacts an individual, who has been represented to the person making the contact as not having attained the age of 18 years"), *with* Protection of Children from Sexual Predators Act of 1998, Pub. L. No. 105–314, § 102, 112 Stat. 2974, 2975–76 (amending § 2422(b) without this change)). That Congress rejected such an amendment to § 2422(b) is not affirmative evidence that Congress meant to exclude situations where detectives posed as minors. *See Gagliardi*, 506 F.3d at 145. Congress may have determined that the statute sufficiently addressed this question without amendment. In *United States v. Gagliardi*, the Second Circuit took note of a House Judiciary Committee report from the time of § 2422(b)'s 1998 amendment, which stated that

> law enforcement plays an important role in discovering child sex offenders on the Internet before they are able to victimize an actual child. Those who believe they are victimizing children, even if they come into contact with a law enforcement officer who poses as a child, should be punished just as if a real child were involved. It is for this reason that several provisions in this Act prohibit certain conduct involving minors and assumed minors.

*Id.* at 146 (citing H.R. Rep. No. 105–557, at 19 (1998)). In the end, "failed legislative proposals are a particularly dangerous ground on which to rest an interpretation of a prior statute." *United States*

*v. Craft*, 535 U.S. 274, 287 (2002) (internal quotation marks omitted). Hackworth's argument is not persuasive.

Finally, case law in this circuit and others supports reading § 2422(b) to criminalize conduct even when an actual minor is not on the receiving end of the communications. In both *United States v. Hughes*, 632 F.3d 956, 958 (6th Cir. 2011), and *Hart*, 635 F.3d at 852, this court upheld convictions under § 2422(b) where undercover detectives posed as 14-year-old girls. Also, in an unpublished opinion, this court held that a defendant may be charged with violating the statute "even though he is mistaken as to the true age of the person with whom he admittedly communicated." *United States v. Fuller*, 77 F. App'x 371, 378 (6th Cir. 2003). Other courts have specifically held that a defendant may be convicted of attempted persuasion or enticement of a minor when the defendant communicates with an adult posing as a minor. *See Gagliardi*, 506 F.3d at 147; *United States v. Helder*, 452 F.3d 751, 756 (8th Cir. 2006); *Tykarsky*, 446 F.3d at 466; *Sims*, 428 F.3d at 960; *Meek*, 366 F.3d at 720; *United States v. Root*, 296 F.3d 1222, 1227 (11th Cir. 2002); *Farner*, 251 F.3d at 512-13. Hackworth's argument gains no further traction when couched as a legal impossibility argument. *See United States v. Sims*, 428 F.3d 945, 959-60 (10th Cir. 2005); *United States v. Farner*, 251 F.3d 510, 512-13 (5th Cir. 2001).

In sum, a conviction under § 2422(b) does not require the involvement of a minor. As a result, Hackworth's conviction rested on sufficient evidence.

B.

Hackworth's next challenge—that the statute was unconstitutional as applied to him—fails

for similar reasons.  He contends the statute is unconstitutional because it allows for a finding of

guilt without a finding that he actually committed a crime.  He states that Kentucky law does not

criminalize the voluntary sexual relations of a person 21 years or older with another person at least

16 years of age.  Nor does it criminalize the solicitation of someone 16 or older.  With Detective

Arterburn on the other end of the computer screen, he argues, no actual crime occurred.  But as *Hart*

makes clear, the crime at issue is the federal crime and the elements of the state offense are not

elements of the federal offense.[1]  *Hart*, 635 F.3d at 856.  The jury in this case convicted Hackworth

of violating § 2422(b).

C.

Hackworth's challenge to the indictment fails on procedural grounds.  He claims that the

indictment was fatally flawed because it failed to specify the Kentucky statutes the government

claimed he could be charged with violating.  The district court, however, correctly denied as

untimely Hackworth's post-trial motion to dismiss the indictment.  Under Federal Rule of Criminal

Procedure 12(b)(3)(B), a motion alleging a defect in the indictment must be made before trial.  The

court may also consider "a claim that the indictment or information fails to invoke the court's

---

[1] Hackworth's reliance on the Seventh Circuit's decision in *United States v. Mannava, 565 F.3d 412 (7th Cir. 2009)*, is misplaced.  The *Hart* court expressly rejected *Mannava*'s conclusion that liability created by 18 U.S.C. § 2422(b) depends on the defendant's having violated another statute, and the elements of the offense under that other statute must therefore be elements of the federal offense.  *Hart, 635 F.3d at 855*.

jurisdiction or to state an offense" at any time while the case is pending. Fed. R. Crim. P. 12(b)(3)(B). Although Hackworth filed a pretrial motion for a more definite statement of the specific state offense the government claimed he could be charged with under § 2422(b), he did not ask that the indictment be dismissed as defective. Nor did he challenge the indictment on grounds it failed to invoke the court's jurisdiction or state an offense under § 2422(b). Even on appeal, Hackworth does not argue that the indictment failed to invoke the court's jurisdiction or state an offense for purposes of Rule 12(b)(3)(B). He ignores Rule 12 when he argues that the elements of § 2422(b) include the underlying Kentucky offenses and should have been specified in the indictment. Without supporting his argument in any meaningful way, he also claims that the failure to give notice of these crimes in the indictment violated his due process rights and that the constitutionally deficient indictment represents a structural error.

Because Hackworth's untimely challenge to the indictment is not excepted by Rule 12(b)(3)(B), this argument is waived for purposes of appeal. This court "strictly applies Rule 12(b), and has repeatedly held that failure to raise 12(b) motions in a timely fashion precludes appellate review." *United States v. Brown*, 498 F.3d 523, 528 (6th Cir. 2007) (quoting *United States v. Oldfield*, 859 F.2d 392, 396 (6th Cir. 1988)). Though a defendant could make an argument that the failure to list the state offenses in the indictment means the indictment fails to state an offense under Rule 12, Hackworth has not made that argument here. Likewise, he has not shown how the failure to list the underlying offenses in the indictment violated his due process rights.

D.

The district court did not abuse its discretion in refusing to give the jury instructions requested by Hackworth. Hackworth argues that the jury instructions were defective because they (1) allowed for a finding of guilt without a unanimous finding that the underlying Kentucky statutes had been violated, (2) did not require that the elements of the state statutes be found beyond a reasonable doubt, and (3) failed to properly instruct on the issue of consent under Kentucky law. Hackworth concedes, however, that his arguments run counter to this court's holding in *Hart*.

Finally, Hackworth's argument that the district court erred when it instructed the jury about different underlying states offenses than those presented to the grand jury overlooks a critical fact: both the grand jury and the jury heard testimony that Hackworth could be charged with the crime of rape in the third degree under Kentucky law.[2] Further, a conviction under § 2422(b) does not require that the jury unanimously agree on the specific type of unlawful sexual activity the defendant would have engaged in. *Hart*, 635 F.3d at 855-56. Any error was harmless.

IV.

For the foregoing reasons, we affirm the judgment of the district court.

---

[2] Hackworth points out that the government presented evidence that he could be charged with rape in the third degree and unlawful transaction with a minor before the grand jury; at trial, the government argued he could be charged with rape in the third degree and sodomy in the third degree.