RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0166p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 14-4129

RICHARD ROMAN,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:14-cr-00043—Algenon L. Marbley, District Judge.

Decided and Filed: July 28, 2015

Before: SILER, ROGERS, and STRANCH, Circuit Judges.

---

**COUNSEL**

**ON BRIEF:** Zenaida R. Lockard, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cincinnati, Ohio, for Appellant. Heather A. Hill, UNITED STATES ATTORNEY'S OFFICE, Columbus, Ohio, for Appellee.

---

**OPINION**

---

STRANCH, Circuit Judge. Richard Roman entered a conditional guilty plea to one count of attempting to use a facility of interstate commerce to knowingly persuade, induce, entice, or coerce a minor to engage in unlawful sexual activity, in violation of 18 U.S.C. § 2422(b). Roman challenges on appeal the denial of his motions to dismiss the indictment and superseding indictment, arguing that his conduct was not prohibited by § 2422(b) because he communicated

1

with an adult intermediary and not a minor child. Roman presents an issue not yet resolved by our circuit in a published opinion.

We recognize that it is not sufficient to allege or prove that a defendant intended to persuade an adult intermediary to cause a child to engage in sexual activity. The gravamen of the attempt offense under § 2422(b) is the intention to achieve the minor's assent. The majority of our sister circuits have held that a defendant's communications with an adult intermediary, performed with the intent to persuade, induce, entice, or coerce a minor to engage in unlawful sexual acts, may be punished as an attempt under § 2422(b) where the defendant sought to obtain the minor's assent to the unlawful sexual activity. We join our sister circuits' interpretation of § 2422(b) and AFFIRM the district court's denial of Roman's motions to dismiss the indictment and superseding indictment.

## I. BACKGROUND

The following facts were offered in support of Roman's conditional guilty plea to the crime charged. On January 16, 2014, Secret Service Special Agent Ryan Seig, a member of the Franklin County Internet Crimes Against Children Task Force, was involved in undercover work to identify individuals seeking to engage in sexual acts with children. Using an online profile of a single father of an 11-year old girl, "Katie," SA Seig responded by email to an ad he found on Craigslist.org. *Id.* The ad was entitled: "I want to be your daddy – m4w – 38, far east side," and it included several images of male genitalia.

Responding to the ad, SA Seig stated that he was a 34-year old father. He received a reply email from an anonymous account stating that the person who posted the ad—later identified as Roman—was looking for females, not males. When SA Seig responded that he was "active" with his daughter, Roman sent another email asking the daughter's age and indicating that he was very interested. SA Seig knew from his training and experience that the term "active" is commonly used to indicate sexual activity with children. After SA Seig sent Roman his cell phone number, the two men conversed by text message throughout the day on

January 17.  SA Seig saved the entire text message conversation he had with Roman, and the government appended a copy of it to the plea agreement.**¹**

SA Seig engaged Roman in a discussion of the sexual acts Roman wished to perform with Katie.  Roman stated, "I'd like more but not until she's comfortable with me."  He asked for photographs of the child and promised that he was "clean and disease free," that he had had a vasectomy, and that he would not hurt the child.  SA Seig instructed Roman that he would have to wear protection and he would stop Roman "if u aren't being respectful at any point."  Roman agreed that was "very understandable."  He wanted to know if Katie is "sexual at her age already" and whether she enjoyed sexual activity.  SA Seig assured Roman that Katie "enjoys it."  Roman texted, "Ok.i really hope she likes me.what's she into? . . . I'll spoil her sexy Lil ass rotten."  He also queried, "would it upset u if she called me Daddy?" and "I really wanna dress her up very sexy.and tease her for awhile before attempting anything.maybe get her to sit on my lap n watch tv at first."  Roman noted that "Hopefully at some point you'll allow me [to] take her shopping.

Roman asked SA Seig where he was located and stated, "I'd really like [to] see some pics of her.I'm very very excited to meet her soon."  Five minutes later, Roman asked, "Does she know about me yet?"  The two men then made plans to meet at 3:30 that afternoon.  Roman asked, "do u think she'll like me?" to which SA Seig replied, "If u are respectful I think so yes."  Roman again asked to see photos of the child, and SA Seig promised to produce photos after the meeting if he decided he could trust Roman.  Roman explained in graphic detail how he had engaged in sexual acts with other young female children.  He asked, "Do u think she'd be willing to Play with me today?  Or is it too soon?"  SA Seig assured Roman, "She will do today if that's what u want.  Ive prepped her for this."  Roman answered, "Yeah i want this."

After Roman remained silent a few minutes, SA Seig asked, "U there?  I need to talk to her if this is happening . . . ."  When SA Seig identified a place to meet, Roman said, "Yeah that works.please tell me you're not the law."  SA Seig reassured Roman and they finished making their plans to meet.  Roman asked if Katie watches pornography, and SA Seig said that he had

---

**¹**To enhance readability, some of the text messages have been altered slightly as indicated, but not all of the spelling, punctuation, and spacing has been changed.

shown some to her. Roman asked if he could take pictures of Katie and said that he would be willing not to photograph her face if "it makes u feel better." He also told SA Seig he had to pick up some condoms and wanted to know "is there anything I can buy her that would break the ice?" SA Seig suggested some flowers or Butterfinger candy, "Her fav." Roman agreed to try to bring both. He also asked if he could take Katie's panties with him and promised "I'll buy her sexy ones if she wants.I'm a push over for Lil girls." Roman wanted to know if Katie liked to kiss. The conversation ended when the men spotted each other in a store parking lot.

After SA Seig approached Roman's vehicle and confirmed that Roman expected to engage in sexual acts with an 11-year old girl and that nothing "painful" would happen, agents moved in and arrested him. Roman's vehicle was impounded and searched. Agents seized a package of Butterfinger candy, a flower, chewing gum, condoms, and personal lubricant.

The government filed a criminal complaint against Roman and, in late February, a grand jury returned a one-count indictment, charging him with using

> a means or facility of interstate commerce, that is, the Internet, to attempt to knowingly persuade, induce or entice an individual whom he believed to be an 11-year old female, to engage in sexual activity for which the defendant can be charged with a criminal offense, specifically violations of Ohio Revised Code Sections 2907.04 and 2907.02(b).
>      In violation of 18 U.S.C. § 2422(b).

R. 9.

Roman moved to dismiss the indictment on the ground that he did not knowingly attempt to persuade, induce, or entice a minor child to engage in sexual activity because all of his communications were with an adult law enforcement agent playing the role of a "decoy parent" and not with a minor child. The government opposed the motion, and the district court denied it in a written Opinion and Order.

In late April 2014, the grand jury issued a superseding indictment charging the same crime, but specifying that Roman had used the Internet and a cellular telephone as the means or facilities of interstate commerce. Roman subsequently agreed to enter a conditional guilty plea to the charge, reserving his right to appeal the denial of his motion to dismiss the indictment. At

the guilty plea hearing, Roman's counsel orally moved to dismiss the superseding indictment on the same ground previously raised. The district court denied the motion, incorporating by reference its prior written Opinion and Order. Roman voluntarily entered a conditional guilty plea to the charge, admitting that the facts provided by the government in support of the guilty plea were true.

Roman faced a mandatory minimum sentence of ten years in prison under 18 U.S.C. § 2422(b). The district court imposed a below-guidelines sentence of 144 months of imprisonment, to be followed by twenty years of supervised release. Roman timely appealed the denial of his motions to dismiss, giving this court jurisdiction of the appeal under 28 U.S.C. § 1291.

## II. ANALYSIS

Roman contends that he could not violate § 2422(b) as a matter of law because he communicated only with an adult law enforcement agent playing the role of a decoy parent and he did not utilize the means or facilities of interstate commerce to persuade, induce, or entice a minor child directly to engage in prohibited sexual conduct. Roman raised this legal issue prior to trial by making motions to dismiss the indictment and superseding indictment under Federal Rule of Criminal Procedure 12(b)(3)(B)(v). We review *de novo* the district court's decision to deny the motions. *See United States v. Ali*, 557 F.3d 715, 720 (6th Cir. 2009).

Roman's argument requires us to interpret the meaning of § 2422(b). Statutory construction always begins with the plain language of the statute, and if that language is "clear and unambiguous," the court "will usually proceed no further." *United States v. Bailey*, 228 F.3d 637, 638 (6th Cir. 2000). The statute provides:

> Whoever, using . . . any facility or means of interstate . . . commerce, . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in . . . any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

18 U.S.C. § 2422(b). The elements of this crime are that (1) the defendant used a means or facility of interstate commerce to knowingly persuade a person under the age of 18 to engage in

sexual activity or to attempt to do so; (2) that the defendant believed the person was under the age of 18; and (3) that if sexual activity had occurred, the defendant could have been charged with a criminal offense under state law.[2] *United States v. Hart*, 635 F.3d 850, 855 (6th Cir. 2011).

Roman points out that the object of each verb used in § 2422(b)—persuades, induces, entices, or coerces—is "any individual who has not attained the age of 18 years." He denies attempting directly to persuade, induce, entice, or coerce a minor child. Because the legislative history of the statute does not mention adult intermediaries, Roman contends that any ambiguity in the statute must be resolved in his favor under the rule of lenity.

We do not agree with Roman's reading of this unambiguous statute. *See Bailey*, 228 F.3d at 639. "Congress has made a clear choice to criminalize persuasion and the attempt to persuade, not the performance of the sexual acts themselves." *Id*. As a result, the focus always remains on the defendant's subjective intent because the statute is "designed to protect children from the act of solicitation itself." *United States v. Hughes*, 632 F.3d 956, 961 (6th Cir. 2011); *Hackworth*, 483 F. App'x at 977. We have held that the statute is violated even if the targeted minor is not a real person as long as the defendant demonstrates that he is, or is attempting to, persuade, induce, entice, or coerce the minor to engage in sexual activity. *Hughes*, 632 F.3d at 960, 962 (upholding a conviction under § 2422(b) where the defendant attempted to entice an undercover agent posing as a minor female); *Hart*, 635 F.3d at 852 (same); *Hackworth*, 483 F. App'x at 973 (same); *United States v. Edington*, 526 F. App'x 584, 589 (6th Cir. 2013) (upholding conviction where agent posed as a minor boy). *See also United States v. Beckman*, No. 14-2058, 2015 WL 4231595, at *8 (6th Cir. July 13, 2015) (upholding conviction where defendant attempted to entice an adult male posing as an adult female with a minor daughter). *Accord United States v. Tykarsky*, 446 F.3d 458, 465–69 (3d Cir. 2006) (upholding conviction where agent posed as a minor female); *United States v. Meek*, 366 F.3d 705, 717–20 (9th Cir. 2004) (affirming

---

[2]The superseding indictment charged Roman with using the Internet and a cellular telephone, both facilities of interstate commerce, in an attempt to persuade, induce or entice a minor child to engage in sexual activity that would violate two Ohio statutes prohibiting sexual activity with minor children, Ohio Rev. Code §§ 2907.02 & 2907.04. *See United States v. Fuller*, 77 F. App'x 371, 377–78 (6th Cir. 2003). The elements of these state offenses, however, are not incorporated into the elements of the federal crime under § 2422(b). *United States v. Hackworth*, 483 F. App'x 972, 976–77 (6th Cir. 2012).

conviction where agent impersonated a minor boy).  Accordingly, the essence of the crime is the defendant's communication or attempted communication with a minor child with the intent to transform the minor into a sexual victim.  *See Hughes*, 632 F.3d at 961.

We agree with our many sister circuits that have held that a defendant violates § 2422(b) by communicating only with an adult intermediary if the defendant's communications with that intermediary are intended to persuade, induce, entice, or coerce the minor child's assent to engage in prohibited sexual activity.  *United States v. Hite*, 769 F.3d 1154, 1160 (D.C. Cir. 2014); *United States v. McMillan*, 744 F.3d 1033, 1036 (7th Cir.), *cert. denied*, 135 S. Ct. 292 (2014); *United States v. Caudill*, 709 F.3d 444, 446–47 (5th Cir.), *cert. denied*, 133 S. Ct. 2871 (2013); *United States v. Olvera*, 687 F.3d 645, 647–48 (5th Cir. 2012) (per curiam); *United States v. Berk*, 652 F.3d 132, 140 (1st Cir. 2011); *United States v. Lanzon*, 639 F.3d 1293, 1298–99 (11th Cir. 2011); *United States v. Lee*, 603 F.3d 904, 912–16 (11th Cir. 2010); *United States v. Douglas*, 626 F.3d 161, 164 (2d Cir. 2010) (per curiam); *United States v. Nestor*, 574 F.3d 159, 161–62 (3d Cir. 2009); *United States v. Spurlock*, 495 F.3d 1011, 1013–14 (8th Cir. 2007).

In applying criminal laws, courts generally "must follow the plain and unambiguous meaning of the statutory language" absent an extraordinary showing that Congress intended otherwise.  *Salinas v. United States*, 522 U.S. 52, 57 (1997) (internal quotation marks omitted). "The ordinary meanings of the verbs persuade, induce, entice, and coerce demonstrate that § 2422(b) is intended to prohibit acts that seek to transform or overcome the will of a minor." *Hite*, 769 F.3d at 1161 (citing dictionary definitions).  We presume that Congress gave these words their ordinary meaning when it drafted § 2422(b), and the circuits agree that these statutory terms "naturally incorporate the use of intermediaries."  *See id.* (citing *McMillan*, 744 F.3d at 1036 ("One particularly effective way to persuade or entice a person to do something is to enlist the help of a trusted relative, friend, or associate."); *Nestor*, 574 F.3d at 162 n.4 ("Businesses and individuals regularly seek to persuade others through advertising intermediaries and negotiating agents.")).

Because in passing § 2422(b) Congress "made a clear choice to criminalize persuasion and the attempt to persuade," *Bailey*, 228 F.3d at 639, and we follow its plain meaning, *Salinas*, 522 U.S. at 57, we need not examine the legislative history in detail, despite Roman's urging to

do so.  In any event, nothing in the legislative history warrants a different interpretation of the meaning of the statute's terms, and the history of the statute's passage and later amendment is fully consistent with congressional policy to prohibit "the use of intermediaries to induce minors (or to attempt to induce them)."  *See Hite*, 769 F.3d at 1163 (discussing legislative history of § 2422(b)); *Nestor*, 574 F.3d at 162 (same).

The circuits further agree that "communications with an intermediary aimed at persuading, inducing, enticing, or coercing a minor to engage in sexual activity fit within [the] common understanding" of a criminal attempt that is prohibited by § 2422(b).  *Hite*, 769 F.3d at 1162.  To establish attempt, the government must prove that the defendant had the intent to commit criminal solicitation of a minor in violation of § 2422(b) and that he took a substantial step towards committing that crime.  *See United States v. Evans*, 699 F.3d 858, 867 (6th Cir. 2012); *United States v. Engle*, 676 F.3d 405, 419–20 (4th Cir. 2012).  Because § 2422(b) "criminalizes an intentional attempt to achieve a *mental* state—a minor's assent," *United States v. Dwinells*, 508 F.3d 63, 71 (1st Cir. 2007), the government's burden of proof does not "change when a defendant, like [Roman], communicates only with an adult intermediary who can influence" the minor.  *Lee*, 603 F.3d at 914.  Congress has criminalized persuasion and the attempt to persuade.  *Bailey*, 228 F.3d at 639.  The crime is complete when the defendant both intends to persuade the minor child to assent to sexual activity and the defendant takes a substantial step toward completing the crime—for example, by engaging in communications with an adult intermediary who can exert influence to help achieve the child's assent.  *See Lee*, 603 F.3d at 915–16; *Berk*, 652 F.3d at 140 (observing that the defendant's communications with a purported father about renting a child out, coupled with a request to know what the minor thought of the idea, was an attempt to "achieve the requisite mental state in the minor"); *Douglas*, 626 F.3d at 164 (observing that a minor's assent can be obtained through a guardian who could help lead the child to participate in sexual activity); *Spurlock*, 495 F.3d at 1014 (noting that the defendant "intended to entice minor girls to have sex with him, and . . . his conversations with their purported mother were a substantial step toward that end").

Like the defendants in these cases, Roman took substantial steps to persuade, induce, or entice the 11-year old Katie to give her assent to engage in sexual activity with him.  First,

Roman tried to flatter Katie's father and agree with any parameters he set. Roman then sought to utilize the influence of Katie's father on Katie by promising him that he did not have any diseases, that he could not cause pregnancy, and that he would use condoms. Roman described similar sexual conduct he had engaged in with other minor females to assure the father that he would not injure his child. Roman tried to achieve Katie's assent to sexual activity by asking the father if he had told Katie about Roman, asking whether she was ready to engage in sexual acts, and seeking to find out what she liked sexually. Roman expressed a desire that the minor child be comfortable with him before attempting any sexual conduct with her. Roman also planned to take the child shopping for clothes to encourage her to engage in sexual conduct with him. He seemed pleased that the father was grooming the child so that Roman could engage in prohibited sexual conduct with her. *See United States v. Fox*, 600 F. App'x 414, 419 (6th Cir. 2015) ("courts have used the term [grooming] to describe a variety of behaviors that appear calculated to prepare a child for a future sexual encounter.").

In addition to seeking Katie's assent by communicating with her father, Roman took substantial steps toward completing the § 2422(b) offense. He purchased a flower and the child's favorite Butterfinger candy to help "break the ice" and to obtain her assent to engage in sexual activity with him. *See United States v. Howard*, 766 F.3d 414, 419–26 (5th Cir. 2014) (discussing the type of conduct that qualifies as a substantial step in violating § 2422(b)).

In a recent unpublished case, we held that similar conduct was sufficient to convict a defendant of attempting to violate § 2422(b). *United States v. Harmon*, 593 F. App'x 455, 458–59 (6th Cir. 2014). In that case, undercover agent Spadafora posed as the father of a fictitious fourteen-year-old female, "Brooke," when he responded to Harmon's internet advertisement. *Id.* at 458. Harmon communicated with Spadafora through emails, internet chatrooms, text messages, and phone calls and sent a nude photo of himself to Spadafora to show to his "daughter." *Id.* He asked for photographs of the child in her underwear, expressed interest in her "thoughts, preferences, and feedback" and repeatedly asked Spadafora about her response to his nude photo and whether she liked it. *Id.* Harmon wanted to know if he should take Brooke out to dinner and spend the entire night with her. *Id.* When Harmon learned that both the father and daughter enjoyed Coors Light beer, he offered to supply some for their upcoming meeting.

*Id.* Harmon assured Spadafora that his daughter "would be in experienced, safe, and disease-free hands." *Id.* On the day of the arranged meeting, Spadafora allowed Harmon to speak on the telephone with a female undercover officer who pretended to be Brooke. *Id.* at 458–59. After the call, Harmon drove to the prearranged meeting site where he was arrested. A search of his vehicle turned up Coors Light beer, condoms, and other items of a sexual nature. *Id.* at 459.

After Harmon's motion to dismiss the indictment was denied, a jury convicted him of an attempt to violate § 2422(b). Affirming Harmon's conviction on appeal, we observed that Harmon's communications with the adult intermediary—the undercover agent posing as Brooke's father—were intended to gain the minor's assent to prohibited sexual activity and that the evidence was admissible at trial to prove Harmon's state of mind. *Id.* at 460, 463–66. Because Harmon intended to achieve the minor child's agreement to engage in sexual acts and because he took substantial steps to obtain that assent, we affirmed his attempt conviction, relying on our own prior precedents and on many of the cases from other circuits cited above. *Id.* at 462, 463 n.1, 467 (citing cases). The holding of *Harmon* thus supports our decision to affirm the denial of Roman's motion to dismiss the superseding indictment.

Contrary to Roman's argument, our decision is consistent with the dissent in part in *United States v. Laureys*, 653 F.3d 27 (D.C. Cir. 2011). Roman contends that the dissent demonstrates that he could not have been indicted for communicating only with an adult intermediary. We disagree. Judge Brown's disagreement in *Laureys* stemmed from the majority's statement that "Laureys attempted to persuade [the adult intermediary] to grant him sexual access to a child and then travelled to the District for the purpose of engaging in sexual conduct with her." *Id.* at 343. Judge Brown clarified that the defendant's persuasion must be directed to the minor child, not the adult intermediary, *id.* at 351–52, and our decision is consistent with that view. Judge Brown, moreover, acknowledged that a defendant can be convicted under § 2422(b) if the defendant's communications with an adult intermediary are aimed at obtaining the assent of the minor child to engage in sexual conduct. *Id.* That view is consistent with the position we take today.

## III.  CONCLUSION

The district court did not err in denying Roman's motion to dismiss the superseding indictment.  Accordingly, we AFFIRM the judgment of the district court.